**Lawrence J. SYROVATKA and Lorraine A. Syrovatka, on behalf of Harold Syrovatka and Timothy Syrovatka, minors, Appellants,**

v.

**Eldin J. ERLICH, Director of State Department of Public Welfare and Leone Lilliedahl, Director of Saunders County Department of Public Welfare and John and Mary Doe, real names unknown, present custodians of the minor children, Harold Syrovatka and Timothy Syrovatka, Appellees.**

No. 79–1269.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Oct. 31, 1979.

---

1. The earlier opinion was reported at 570 F.2d 1349 (8th Cir. 1978).

Philip M. Kelly, Scott & Kelly, Mitchell, Neb., on brief, for appellants.

Paul L. Douglas, Atty. Gen., and Royce N. Harper, Asst. Atty. Gen., Lincoln, Neb., on brief, for appellees.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS *, District Judge.

STEPHENSON, Circuit Judge.

This action arose on an application for writ of habeas corpus under 28 U.S.C. § 2254, filed by Lawrence and Lorraine Syrovatka (appellants) to gain custody of their minor children.[1] The district court[2]

---

* The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. On appeal appellants seek alternative relief; see note 5 infra.

2. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

dismissed the writ. Appellants allege that the termination of their parental rights is invalid because they received inadequate notice of the hearing, in violation of their Fourteenth Amendment due process rights. The resulting adoption is likewise invalid, appellants argue, because it lacked the consent of the natural parents. We affirm the dismissal of the petition for writ of habeas corpus.

The order at issue was entered by the county judge of Saunders County, Nebraska, after a hearing on January 4, 1967. The order declared that Tim and Harold Syrovatka were "neglected children and children in need of special supervision." The order committed both to the custody of "the State Department of Public Welfare of the State of Nebraska, there to be received, cared for, educated and kept until each shall arrive at the age of 21 years * * * ."

On October 2, 1968, the children were adopted with the consent only of the Department of Public Welfare, consistent with the provisions of Neb.Rev.Stat. § 43–209 (Reissue 1978). The Syrovatkas were notified of the adoption by letter dated December 30, 1968.

On March 6, 1972, a habeas corpus action attacking the order of commitment was filed in the District Court for Lancaster County, Nebraska. After a full evidentiary hearing at which the parents testified, the district court dismissed the petition. The Nebraska Supreme Court affirmed the dismissal. *Syrovatka v. Graham*, 190 Neb. 355, 208 N.W.2d 281 (1973). That court based its conclusion on two grounds. (1) The district court properly concluded that the parents were in court and therefore had notice of the hearing; and (2) appellants were barred by Neb.Rev.Stat. § 43–116 (Reissue 1978), which establishes a two-year period for challenging adoption proceedings, and laches from attacking the validity of the adoption occurring more than three years after they received notice of the adoption,

and more than five years after the hearing which terminated their parental rights.

On February 3, 1978, appellants filed an application for writ of habeas corpus in federal district court. A hearing was held on December 22, 1978, and an order dismissing the writ was entered on January 9, 1979.

The evidence and testimony presented in the state and federal habeas corpus hearings on the issue of the notice to appellants of the parental rights termination hearing must be examined on this appeal.

The first petition alleging that all six of the Syrovatka children were neglected was filed in December 1965. Tim and Harold Syrovatka, the minor children involved in the present action, were not taken from their parents' custody at this time, although a hearing was held. On November 30, 1966, the county attorney by written motion declared that Tim and Harold Syrovatka were again neglected children. An order from the county judge setting a hearing for December 2, 1966 ordered both the parents and children to appear personally before the court. At this time, both parents were in the county jail awaiting criminal charges. Lawrence Syrovatka was represented by counsel in the criminal matter. The sheriff signed a certification that the order for the December 2, 1966 hearing was served on the appellants.

An order from the county judge on December 2, 1966, states that a hearing was held and the parents were present in court. A continuance until December 27, 1966 was ordered so that Lawrence Syrovatka could make arrangements to be represented by an attorney in the child custody matter. The children were ordered to be placed in temporary custody of the welfare director for placement in foster homes until further court order. A copy of the order was directed to be delivered to Lawrence Syrovatka in the county jail.[3]

---

**3.** Temporary custody was necessary because both Lawrence and Lorraine Syrovatka were confined in the county jail at the time pending charges for child abusement. Additionally,

On December 27, 1966, the matter was continued until January 4, 1967, when the order committing the children to the State Department of Public Welfare was entered. That order also recited "[p]resent in court are Lawrence Syrovatka and Lorraine Syrovatka, father and mother of the above named children." [4]

Based on this evidence, and the testimony of the parents at the hearing on the state habeas action, the Nebraska courts determined that appellants had notice of the January 4, 1967 hearing and were in fact present. The federal district court, on the basis of the state record and its own hearing, concluded that the fact-finding procedure employed by the state court was adequate, that a full and fair hearing was had, and the material facts were adequately developed at the state court hearing. On this basis, the federal district court properly concluded that the appellants had notice of the hearing.

■ It is the duty of the district court to apply the applicable federal law to the state court's findings independently. *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). A finding that the parents were present at the hearing does not necessarily mean that the notice complied with procedural due process. The procedural due process requirements for parental rights termination hearings were announced in *Alsager v. District Court of Polk County*, 406 F.Supp. 10, 24–25 (S.D. Iowa 1975), aff'd, 545 F.2d 1137 (8th Cir. 1976). The notice requirements outlined in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) were applied to parental termination hearings in *Alsager*. This court approved of the district court's holding that:

> notice should include the date, time and place of the hearing; a clear statement of the purpose of the proceedings and the possible consequences to the subject

thereof; the alleged factual basis for the proposed commitment; and a statement of the legal standard upon which commitment is authorized.

406 F.Supp. at 25 (quoting *Lynch v. Baxley*, 386 F.Supp. 378, 388 (M.D.Ala.1974)).

■ The appellant's argument is that even if they were present in court for the hearing, they were not given adequate notice of the hearing as required by *Alsager*. The district court did not address that issue. The state court records and the testimony of the appellants concerning notice is confusing and at times contradictory. We agree with the appellants that there is evidence the notice of the termination hearing did not adhere to the due process standards announced in *Alsager*.

Appellants' application for writ of habeas corpus must be dismissed for other reasons, however. This conclusion would not be altered by a finding that due process notice standards were not fully satisfied.

■ The first reason for dismissing the application for writ of habeas corpus is that the opportunity to challenge the adoption proceeding by collateral attack is no longer available to the appellants. *Hiatt v. Menendez*, 157 Neb. 914, 62 N.W.2d 123 (1954) held that Neb.Rev.Stat. § 43–116 (Reissue 1978) does contemplate that an adoption may be challenged for irregularity in the adoption proceedings. However, the action must be brought within two years. The applicable provision of that statute states:

> When any county court in the State of Nebraska shall * * * hereafter enter of record such a decree of adoption, it shall * * * be conclusively presumed that said adoption and all instruments and proceedings in connection therewith are valid in all respects notwithstanding some defect or defects may appear on the face of the record, or the absence of any record of such court, unless an action is

---

4. Lawrence Syrovatka was awaiting trial for a statutory rape charge on which he was acquitted in March 1967. The Syrovatkas contend they did not get a copy of this order.

4. Both parents dispute being present on that date. It is also unclear from the record whether an attorney, who had been present at criminal hearings at the time, was consulted concerning the custody hearing.

brought within two years from the entry of such decree of adoption attacking its validity.

Neb.Rev.Stat. § 43–116 (Reissue 1978). In *Hiatt* the court ruled that because the adoption was challenged more than three years after the rendition of the decree, appellant was barred by the statute from taking advantage of the irregularity.

The Syrovatkas brought their first action challenging the adoption in 1972. Even if the date appellants learned of the adoption, which was receipt of a letter dated December 30, 1968, is used, the action was brought more than three years after notice of the adoption. In such a case, the conclusive presumption of validity contained in section 43–116 operates to bar the subsequent action challenging the defect. *See Syrovatka v. Graham*, 190 Neb. 355, 208 N.W.2d at 283.

■ "[A] conclusive presumption will be upheld so long as it is reasonable." *Shanahan v. United States*, 447 F.2d 1082, 1084 (10th Cir. 1971). Here the State of Nebraska has a legitimate and important interest in establishing a stable environment for adopted children. This statute requiring an action challenging an adoption proceeding to be brought within two years of the adoption has a reasonable relation to this legitimate state purpose.

■ Additionally, in a habeas corpus proceeding involving child custody, the best interests of the children remain paramount. As stated by the Nebraska Supreme Court:

> Ordinarily, the basis for the issuance of a writ of habeas corpus is an illegal detention, but in the case of a writ sued out for the detention of a child, the law is concerned not so much about the illegality of the detention as about the welfare of the child.

*Christopherson v. Christopherson*, 177 Neb. 414, 129 N.W.2d 113, 115 (Neb.1964).

■ In considering the best interests of Tim and Harold Syrovatka, it cannot be overlooked that the adoption took place

over eleven years ago, and custody was awarded the state nearly thirteen years ago. By the end of the year, the boys will be sixteen and eighteen years of age. When the Nebraska Supreme Court considered this issue in the Syrovatka appeal over six years ago, it stated that "[t]o disturb the present relationship at this late date would be a cruel travesty on justice." *Syrovatka v. Graham*, 208 N.W.2d at 283. This court agrees that to remove the children now from their adoptive homes would not serve their best interest.[5]

For these reasons we affirm the dismissal of the application for writ of habeas corpus.

---

5. Appellants admit as much in their brief. The prayer for relief now suggests that the best interests of the children may be served by some limited contact or visitation, and seeks a remand for the district court to consider this issue.