Catarino GONZALES, Jr., Petitioner,

v.

Gary GRAMMER, Respondent.
(Two Cases)

Nos. CV84–L–691, CV86–L–424.

United States District Court,
D. Nebraska.

March 11, 1987.

Robert Wm. Chapin, Jr., Lincoln, Neb., for petitioner.

Sharon Lindgren, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The petitioner was convicted for burglary in the District Court in Scotts Bluff County, Nebraska, in 1983. In these two habeas corpus actions he asserts six constitutional violations. One of them, ineffective assistance of counsel, was dismissed from the first petition, CV84–L–691, for failure to exhaust his state court remedies after he elected in accordance with *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) to proceed with his exhausted claims. The claim of ineffective assistance of counsel was presented to the Nebraska courts and that claim now is included in the second petition, CV86–L–424. Accordingly, they now may be considered together.

Magistrate David L. Piester analyzed the claims and ordered an evidentiary hearing on the claim that two prior convictions used to enhance sentences under Nebraska's habitual criminal statute, § 29–2221, Neb.R. R.S.1943, as amended, were invalid and concluded that the remaining five claims were not meritorious. I accept the recom-

mendation of the magistrate as to each of the five claims and shall deny relief on them. Further focus is needed on the claim regarding enhancement in view of the evidentiary hearing held February 27, 1987.

The petitioner pleaded guilty in 1973 to two counts of breaking and entering and in 1975 to one count of willful failure to appear before the court. The issue now is whether those pleas were made intelligently and understandingly within the meaning of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The Supreme Court in *Boykin v. Alabama, supra,* said:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy v. Hogan*, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)]. Second, is the right to trial by jury. *Duncan v. Louisiana*, 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)]. Third, is the right to confront one's accusers. *Pointer v. Texas*, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)]. We cannot presume a waiver of these three important federal rights from a silent record.

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvasing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ..., and forestalls the spin-off of collateral proceedings that seek to probe murky memories."

When the Supreme Court of Nebraska confronted the *Boykin* issue in the petitioner's direct appeal, it repeated its position in *State v. Turner*, 186 Neb. 424, 425, 183 N.W.2d 763, 765 (1971), that a "requirement of an item-by-item review of constitu-

tional rights on a guilty plea is a strained and a too extreme construction of [*Boykin v. Alabama* and *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)]." But in *State v. Tweedy*, 209 Neb. 649, 652, 309 N.W.2d 94 (1981), the Supreme Court of Nebraska acknowledged that:

"If we concede that the record must affirmatively show an intelligent plea, understandingly entered, it is difficult to imagine how this can be demonstrated unless that same record discloses knowledge on the part of a defendant as to what rights he is waiving when entering such plea."

It went on to hold:

"We therefore hold that no defendant may be imprisoned for any offense ... absent a knowing and intelligent waiver of his rights as provided for by the *Boykin-Turner* rule. That means that such defendants are entitled to be informed of the nature of the charges against them, the right to assistance of counsel, the right to confront witnesses against them, the right to a jury trial where otherwise authorized, and the intelligent waiver of these rights must affirmatively appear from the record."

*Id.* 654–55, 309 N.W.2d 94.

I think the Supreme Court of Nebraska in the *Tweedy* case accurately interpreted the *Boykin* holding and that that interpretation is as valid for 1973 and 1975 pleas of guilty as for post–1981 pleas.

In *Todd v. Lockhart*, 490 F.2d 626 (8th Cir.1974), the court said:

"Since we believe that as a constitutional matter the question is whether the plea was voluntary and intelligent, we agree with a number of other courts which have held that a state may, in a state post-conviction hearing ... or in a federal post-conviction hearing ... cure the otherwise defective plea-taking transcript.... In so doing we do not return to the pre-*Boykin* practice of assuming that a defendant represented by counsel has entered a voluntary and intelligent plea. Rather, we hold that once a state prisoner has demonstrated that the plea

taking was not conducted in accordance with *Boykin,* the state may, if it affirmatively proves in a post-conviction hearing that the plea was voluntary and intelligent, obviate the necessity of vacating the plea."

*Id.* at 627–28.

The 1973 conviction resulted from a guilty plea on May 3. Gonzales was represented by counsel. The judge informed Gonzales that he was charged with a felony and that if he pleaded not guilty he would be entitled to have trial by jury, and told the defendant that if he pleaded guilty what the range of the permissible sentence would be. Gonzales said that he understood that. The judge then obtained from Gonzales assurance that there had been no threat or promise. The colloquy continued as follows:

> "THE COURT: Are you pleading guilty freely and voluntarily—
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: —with the understanding of what the consequences might be?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you pleading guilty because you feel that you are guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Let the record show that the defendant's plea of guilty to Count One as well as to County Two will be accepted by the Court and the finding of guilty entered."

Plaintiff's Exhibit 3.

The journal entry made by the judge to reflect the May 3, 1973, arraignment stated:

> "The court then informed the defendant of his various rights, including the right to trial by jury, if a not guilty plea was entered. The court further informed the defendant of the possible sentence which could be imposed by the court upon a plea of guilty to the charges against him. The court then inquired of the defendant if he understood what his rights were if he entered a plea of not guilty and of the possible sentence which could be imposed by the court upon a plea of guilty, to which the defendant answered in the affirmative."

\*   \*   \*   \*   \*   \*

The defendant entered a plea of guilty to both counts in the information. The court then inquired into the factual basis for a said plea and whether or not said plea was accurately and voluntarily given. The State of Nebraska then informed the court as to what it could prove if the matter went to trial. The court, being satisfied that the pleas of guilty to both counts on the information were accurately and voluntarily given, and that a factual basis did exist for said pleas, accepted the defendant's pleas of guilty ..."

Plaintiff's Exhibit 1.

The 1975 conviction came from a plea of guilty on September 9 of that year. The information was read to Gonzales and the judge informed him that he was charged with a felony, that if he pleaded not guilty he would have a right to have a trial by jury and that if he should plead guilty the court then could sentence him to imprisonment for not more than three years. The defendant acknowledged that he understood that, whereupon he pleaded guilty. The judge then inquired whether any threats have been made or any promises to get a plea of guilty and the defendant answered in the negative. The judge asked whether Gonzales had talked the matter over with his attorney and the defendant answered that he had.

The journal entry of the September 9, 1979, arraignment recites:

> "The Defendant was duly arraigned upon the information by having the same read to him, advised of the possible consequences of a plea of guilty, of his right to trial by jury upon a plea of not guilty and the waiver of those rights if the plea of guilty was entered. Whereupon, the Defendant responded that he desired to plead guilty and did plead guilty and the Court, after inquiry, finds that this plea is intelligently, freely and voluntarily made and a factual basis exists therefor."

Plaintiff's Exhibit 2.

█ At the evidentiary hearing in this court on February 27, 1987, Gonzales testi-

fied that his attorney never explained to him what the state had to prove, never stated what his constitutional rights were, did not explain what he was waiving by pleading guilty, did not explain the right to self-incrimination or the right to confront witnesses either in 1973 or in 1975. Gonzales was 17 years old at the time of the 1973 plea and 19 or 20 at the time of the 1975 plea. He had attended high school, but did not graduate and had had no legal or paralegal background before either of the pleas and had had no tutoring or special classes.

There was no testimony by the attorney who represented Gonzales at the 1973 and 1975 proceedings.

The plea taking in 1973 and in 1975 was not conducted in accordance with *Boykin v. Alabama, supra.* The state had an opportunity at the evidentiary hearing here to produce evidence to prove affirmatively that the pleas were voluntary and intelligent, obviating the necessity of vacating the plea in accordance with *Todd v. Lockhart, supra.* There was no such evidence offered.

The conclusion is that two of the petitioner's constitutional rights—the right against compulsory self-incrimination and the right to confront his accusers—could not have been voluntarily and knowingly given up, because he did not know that he had them. Neither the judge nor counsel told him that he had them or that he would give them up if he pleaded guilty. To be a waiver there must be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

That the state judge found that the petitioner's guilty pleas were voluntary is not of significance in my deciding whether there has been a constitutional violation. A state court's finding of historical fact is binding upon me. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The ultimate conclusion, however, as to whether a plea of guilty was voluntary for purposes of the United States Constitution is a matter of federal law and it is my duty to make that finding upon the evidence as it is before me. *See Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). In view of the evidence I find that neither of the pleas was voluntary. As such, neither could be used as enhancement at the time of the October 11, 1983, sentencing.

### ORDER

In accordance with the memorandum of decision of today,

IT IS ORDERED that the petition for a writ of habeas corpus is granted on the ground that the sentence to a term of 10 to 12 years in the Nebraska State Penitentiary was in violation of the Constitution of the United States because it relied upon pleas of guilty in 1973 and 1975 which were not made voluntarily and intelligently; therefore, unless the State of Nebraska within 30 days after this order becomes final institutes resentencing procedures without reliance upon the petitioner's 1973 and 1975 convictions resulting from his pleas of guilty, the petitioner shall be released from custody.