STATE OF NEBRASKA, APPELLEE, V. WAYNE J. CRANE, APPELLANT.

480 N.W.2d 401

Filed February 21, 1992.    No. S-90-1085.

Rex R. Schultze and Maureen L. Allman, of Perry, Guthery, Haase & Gessford, P.C., for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, AND SHANAHAN, JJ.

PER CURIAM.

This is a criminal case in which the State alleged in a three-count complaint that on July 25, 1988, the defendant-appellant, Wayne J. Crane, committed the crimes of second-offense driving while under the influence of alcoholic liquor, in violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1988); driving left of center, in violation of Neb. Rev. Stat. § 39-620 (Reissue 1988); and improper passing, in violation of Neb. Rev. Stat. § 39-624 (Reissue 1988). Crane pled not guilty to all three counts and waived his right to a jury trial. His case was tried to the Lancaster County Court on a set of stipulated facts. On August 10, 1989, the trial court found Crane guilty of the driving left of center and improper passing charges, as well as guilty of the underlying offense of driving while under the influence.

The trial court held an enhancement hearing on September 29, 1989, at which the State offered evidence that Crane had pled guilty to driving while under the influence in 1979. The State's evidence revealed that the incident occurred on February 13, 1979; that the Lancaster County Court received Crane's plea on April 17, 1979; and that Crane was represented by counsel at the time.

The trial court in this case received the evidence regarding Crane's 1979 conviction over his objection that it could not provide the basis for enhancing his current conviction because the 1979 record lacks any showing that he voluntarily and intelligently waived his rights, as required by the U.S. Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Having overruled Crane's objection, the trial court found Crane guilty of second-offense driving while under the influence and entered a judgment of conviction accordingly.

On April 3, 1990, the trial court overruled Crane's motion to vacate the September 29, 1989, ruling and sentenced him to 30 days in the county jail, revoked his operator's license for 1 year, and imposed a $500 fine on count I; imposed a $25 fine on count II; and imposed a $25 fine on count III. Crane appealed to the Lancaster County District Court, which affirmed the judgment and sentences of the trial court.

Crane perfected an appeal to this court and argues that the trial court abused its discretion by (1) enhancing his driving while under the influence sentence based on a prior conviction, where the record fails to show that he voluntarily and intelligently waived his rights, as required by *Boykin, supra*, and (2) enhancing his sentence when there is presently no procedure in place to challenge the constitutional validity of the conviction on which the enhancement is based.

Before discussing Crane's assignments of error, we note that during oral argument, questions from the bench strongly suggested that Crane's 1979 conviction occurred more than 10 years prior to his current conviction and thus could not provide the basis for enhancement of the current charge. See Neb. Rev. Stat. § 39-669.07(b)(i) (Reissue 1988). A closer reading of the statute reveals, however, that the 10-year period is measured as of the dates the offenses occurred and not the dates of conviction. See Neb. Rev. Stat. § 39-669.07 (Reissue 1988). Because the offenses in this case occurred on February 13, 1979, and July 25, 1988, respectively, the 10-year limitation is not implicated.

Crane argues that because the record of his 1979 plea lacks any indication that he voluntarily and intelligently waived his rights, as required by *Boykin*, it cannot provide the basis for enhancement of his current conviction. For this proposition he relies primarily on a decision of the U.S. District Court for the District of Nebraska granting the habeas corpus petition of a person convicted of third-offense drunk driving based on two prior plea-based convictions violative of *Boykin*. See *Oliver v. Spire*, No. CV89-L-149 (D. Neb. Sept. 10, 1990). Crane further argues that his inability to challenge the constitutional validity of the prior conviction at the enhancement hearing because of our earlier holding in *State v. Oliver*, 230 Neb. 864, 434 N.W.2d

293 (1989), which limits collateral attacks on prior plea-based convictions to direct appeals of those convictions or separate proceedings instituted for that purpose, violates his due process rights. In short, Crane argues that the federal court's holding indicates that our decision in *Oliver* is incorrect and should be overturned. We disagree.

We believe the federal court misread our decision in *Oliver* in granting the habeas corpus petition of the defendant in that case. The federal court concluded that *Oliver* did not "clearly and expressly" rest on a state procedural bar. Instead, the court suggested that *Oliver* stands for the proposition that proof of the presence or waiver of counsel is sufficient to establish the constitutional validity of a guilty plea offered for enhancement purposes. That is not what we held in *Oliver*.

We have repeatedly held that, as a procedural matter, a defendant cannot collaterally attack a prior conviction in an enhancement proceeding and that challenging a prior plea-based conviction based on the lack of a *Boykin*-type colloquy constitutes a collateral attack. See, *State v. Johns*, 233 Neb. 477, 445 N.W.2d 914 (1989); *State v. Davis*, 224 Neb. 518, 398 N.W.2d 729 (1987); *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985); *State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984). We do, however, allow challenges to prior plea-based convictions offered for enhancement purposes based on the transcript's failure to disclose whether the defendant had or waived counsel at the time the pleas were entered. See *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983). We do so because we do not regard such a challenge as a collateral attack on the former judgment. *Id.* One could also challenge the constitutional validity of a prior conviction through a separate proceeding, such as an action for declaratory judgment.

In *Oliver*, the State's evidence showed that the defendant was represented by counsel during each of his prior convictions. Therefore, his only basis for challenging the validity of those convictions for enhancement purposes was the lack of a *Boykin*-type colloquy. In affirming the trial court's decision, we simply reaffirmed our procedural rule barring such a collateral attack in an enhancement proceeding.

Here, Crane's attempt to challenge the 1979 plea based on the lack of any indication that he voluntarily and intelligently waived his *Boykin* rights constitutes a collateral attack on the prior conviction and is thus barred by our holding in *Oliver*. The State's evidence indicates that Crane pled guilty to driving while under the influence of alcoholic liquor in 1979 and that he was represented by counsel at that time. Based on that evidence, the trial court could reasonably conclude that Crane's current conviction is his second such conviction, and therefore, the trial court did not abuse its discretion in entering the judgment and sentence it did. The decision of the Lancaster County District Court is affirmed.

AFFIRMED.

GRANT, J., participating on briefs.

FAHRNBRUCH, J., not participating.

WHITE, J., dissenting.

Today, the majority continues its refusal to recognize any legitimate or practical procedure for challenging, in an enhancement proceeding, the constitutional validity of a prior plea-based conviction. Because this refusal renders illusory the fundamental rights recognized in *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), I renew my dissenting opinion previously stated in *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989).

SHANAHAN, J., dissenting.

What the majority characterizes as a procedural bar, that is, "our procedural rule barring" inquiry into a defendant's prior plea-based conviction, is actually a very real denial of a substantive right of constitutional stature. The majority maintains that since inquiry into constitutional validity of a defendant's prior plea-based conviction is a procedural matter, a defendant's inquiry into a prior conviction may be barred by procedural default, that is, failure to invoke and adhere to a procedure available to examine the constitutional validity of a prior conviction. Can there be a procedural default, namely, noncompliance with a prescribed and valid procedure, when in fact no procedure exists? Is it possible to have procedural noncompliance or default concerning a nonexistent procedure?

Procedural default is not the same as procedural deficiency, because a defendant cannot fail to employ and comply with a procedure unless the procedure first exists. Presently, beyond limited inquiry into representation by counsel at a prior plea-based conviction, Nebraska law provides no procedure whereby a defendant may assert and establish constitutional invalidity of a prior conviction. See *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989) (Shanahan, J., dissenting). Consequently, failure to provide a procedure for assertion of a constitutional right is essentially and effectively an absolute and complete denial of the constitutional right and, hence, a denial of due process.

In *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), the U.S. Supreme Court held that a defendant's guilty plea is constitutionally invalid unless the record affirmatively shows that the defendant voluntarily and intelligently waived the rights to trial by jury, to remain silent, and to confront accusers. From *Boykin*, one must conclude that a conviction based on a constitutionally invalid guilty plea is equally invalid and, therefore, lacks constitutional effect.

Also, in *State v. White*, 238 Neb. 840, 848-49, 472 N.W.2d 720, 726 (1991), we stated, "As a matter of due process in the Nebraska criminal justice system, a defendant's guilty or nolo contendere plea must satisfy the requirements expressed in *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986)." In *Irish*, this court recognized that "to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly," the court in which the defendant enters the plea must inform the defendant concerning "(1) the nature of the charge; (2) the right to assistance of counsel; (3) the right to confront witnesses against the defendant; (4) the right to a jury trial; and (5) the privilege against self-incrimination . . . ." 223 Neb. at 820, 394 N.W.2d at 883.

Thus, in accordance with due process and pursuant to *Boykin* and *Irish*, a defendant's plea of guilty or nolo contendere is constitutionally valid only if the defendant, prior to entry of the plea, has been informed concerning the constitutional rights to confront witnesses against the

defendant, have a trial by jury, and exercise the privilege against self-incrimination. True, *Irish* goes beyond *Boykin* regarding additional information which a defendant must have for a constitutionally valid conviction based on the defendant's plea; for example, *Irish* requires that a defendant must be informed concerning the constitutional right to assistance of counsel, whereas that information concerning counsel is not required for a valid plea under *Boykin*.

Nevertheless, this court indulges in a semantical smokescreen from which there emerges an illusory distinction: inquiry into the question of counsel in a prior plea-based conviction is characterized as a direct attack, while, simultaneously, inquiry into a prior plea-based conviction in light of *Boykin* and *Irish* is characterized as a "collateral attack." That approach ignores that, under *Boykin* and *Irish*, the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers, which the majority maintains cannot be the bases for an inquiry into a prior plea-based conviction, are the constitutional coequals of a defendant's right to representation by counsel in a criminal case and, consequently, have the same stature and identity of import in constitutional law. Indeed, the Supreme Court, in *Boykin*, specifically equated a defendant's right to counsel with his rights to trial by jury, to remain silent, and to confront accusers, requiring that the same standard must be applied concerning a waiver of each of those constitutional rights. See *Boykin, supra*. Moreover, both the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution express a criminal defendant's rights to counsel, to confront accusers or witnesses against the defendant, and to have a jury trial. Yet, in the majority's view, a defendant can inquire whether the defendant was represented by counsel or waived that representation in a prior plea-based conviction, but cannot inquire whether the defendant was informed concerning the rights to confront accusers or adverse witnesses and have a jury trial, rights which are specifically expressed within the same constitutional provision for assistance of counsel. There is no constitutional hierarchy or other order of preference or priority for the rights to counsel, to confront accusers, and to have a

jury trial. Why exploration of the counsel question is permissible, but inquiry concerning the other rights in the same constitutional provision is impermissible, remains unexplained and indefensible. Thus, the majority's approach to the problem is a classic illustration of a "[d]istinction without a difference."

Because there is no rational basis for this court's disparate treatment of a defendant's constitutional rights as subjects for inquiry into a prior plea-based conviction, this court has used its power of definition and classification without a constitutional basis and, therefore, in an arbitrary and impermissible manner. As this court expressed regarding the Legislature, classification of " 'persons, places, objects or subjects . . . must rest upon some difference in situation or circumstance which, in reason, calls for distinctive legislation for the class.' " *Natural Gas Pipeline Co. v. State Bd. of Equal.*, 237 Neb. 357, 370, 466 N.W.2d 461, 470 (1991) (quoting from *State, ex rel. Cone, v. Bauman*, 120 Neb. 77, 231 N.W. 693 (1930)). Moreover, a

> legislative definition must be reasonable, and cannot be arbitrary and unfounded. . . . "[T]here is a limit to the legislature's power to nullify and circumvent constitutional provisions by putting an arbitrary, but improper and unfounded, definition upon a certain word." . . . "*Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference.*"

(Emphasis in original.) *MAPCO Ammonia Pipeline v. State Bd. of Equal.*, 238 Neb. 565, 571, 573, 575, 471 N.W.2d 734, 739-41 (1991) (quoting from *Moeller, McPherrin & Judd v. Smith*, 127 Neb. 424, 255 N.W. 551 (1934), and *State ex rel. Douglas v. Marsh*, 207 Neb. 598, 300 N.W.2d 181 (1980)). What this court has previously chided as arbitrariness and a distinction without a substantial difference in perceived infirmity of legislative action is now all too obviously and painfully present in the judicial action taken today by the majority in Crane's case, for this court has unfortunately applied its definitional powers to achieve an arbitrary classification which lacks a rational and legitimate basis in the Constitutions of the United States and Nebraska and

circumvents due process required by the Constitutions. "Physician, heal thyself."

One notably peculiar feature of the majority's opinion is the expression "challenging a prior plea-based conviction based on the lack of a *Boykin*-type colloquy constitutes a collateral attack," which is soon followed by an afterthought without much thought: "One could also challenge the constitutional validity of a prior conviction through a separate proceeding, such as an action for declaratory judgment." Let's run through that again. A *Boykin* claim and, correspondingly, an *Irish* claim raised in an enhancement proceeding constitute a collateral attack on a prior plea-based conviction used in the enhancement proceeding, but a declaratory judgment outside the enhancement proceeding, that is, a separate proceeding to determine the constitutional validity of the prior conviction used in an enhancement proceeding, is not a collateral attack. In *Moore v. Black*, 220 Neb. 122, 127, 368 N.W.2d 488, 492 (1985), this court stated:

> [A]n original action which does not state a valid, independent cause of action apart from the appeal of a lower tribunal's decision constitutes an impermissible collateral attack on that decision and is not maintainable as an action for a declaratory judgment unless the decision was procured by fraud or the lower tribunal lacked jurisdiction, thus rendering its decision void.

See, also, *Reed v. Parratt*, 207 Neb. 796, 301 N.W.2d 343 (1981); *Schilke v. School Dist. No. 107*, 207 Neb. 448, 299 N.W.2d 527 (1980).

> A declaratory judgment action is not a substitute for a new trial or appeal; a method of destroying proper exercise of power in a former action; authority for a second trial by the same parties on identical issues in different forums; or a justification for an unnecessary decision; and does not approve collateral attacks on former adjudications or operate to supersede former adjudications or proper proceedings already pending in court. See, *Moore v. Black*, 220 Neb. 122, 368 N.W.2d 488 (1985); *Zarybnicky v. County of Gage*, 196 Neb. 210, 241 N.W.2d 834 (1976); *Phelps County v. City of Holdrege*, 133 Neb. 139, 274

N.W. 483 (1937).

*State v. Oliver*, 230 Neb. 864, 878, 434 N.W.2d 293, 302 (1989) (Shanahan, J., dissenting).

Thus, while the majority emphatically denounces a *Boykin* or *Irish* claim as a collateral attack in an enhancement proceeding, in the same breath the majority suggests recourse to a declaratory judgment action, which is itself an action collateral to the enhancement proceeding and, therefore, a collateral attack on the prior conviction used for enhancement. Consequently, in the majority's view, a collateral attack is impermissible to test the constitutionality of a prior plea-based conviction, but a collateral attack in the form of a declaratory judgment action is available to contest the constitutional validity of the prior conviction. What a colossal contradiction! For that reason, a declaratory judgment action under the circumstances is feckless, a forensic phantom for rectification of a wrong.

Also, were a declaratory judgment available to test constitutionality of a prior plea-based conviction, why would it be necessary to engender such inquiry in an action entirely and procedurally separated from an enhancement proceeding? Judicial economy and efficiency, as well as an avoidance of burgeoning litigation, require an uncomplicated and direct approach in an enhancement proceeding, namely, allowing a defendant to contest the constitutional validity of a prior conviction in the proceeding wherein the prior conviction is sought to be used against the defendant. That procedure would comport with the Constitutions and common sense. Otherwise, the more twists and turns one puts in a pipeline, the more one slows the flow. Nevertheless, under the approach adopted by the majority, the situation is hopeless but, in the majority's view, not serious.

Even if a *Boykin* or *Irish* inquiry into Crane's prior conviction is a collateral attack, such inquiry is available in accordance with due process, for, as the U.S. Supreme Court has clearly stated in *Boykin v. Alabama*, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), " 'Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore

void.' " Although this court declares that a collateral attack on a prior plea-based conviction is procedurally barred, the longstanding rule in Nebraska is that " 'a void judgment is subject to collateral attack.' " *State ex rel. Ritthaler v. Knox*, 217 Neb. 766, 768, 351 N.W.2d 77, 79 (1984). Accord, *Schilke v. School Dist. No. 107, supra*; *State ex rel. Southeast Rural Fire P. Dist. v. Grossman*, 188 Neb. 424, 197 N.W.2d 398 (1972). Moreover, "a void judgment may be attacked at any time in any proceeding." *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 249, 328 N.W.2d 759, 763-64 (1983). Accord *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988). " 'A void judgment is in reality no judgment at all. It does not bind the person against whom it is rendered. It may be impeached in any action, direct or collateral.' " *Stanton v. Stanton*, 146 Neb. 71, 75, 18 N.W.2d 654, 656 (1945). " 'It is a general rule of law that a judgment which is null and void is subject to collateral attack.' 31 Am. Jur. 181, sec. 583. 'A void judgment may be impeached in a collateral proceeding.' 34 C.J. 510." *Drainage District No. 1 v. Village of Hershey*, 139 Neb. 205, 211, 296 N.W. 879, 882 (1941). See, also, *Davis Management, Inc. v. Sanitary & Improvement Dist. No. 276*, 204 Neb. 316, 282 N.W.2d 576 (1979); *County of Douglas v. Feenan*, 146 Neb. 156, 18 N.W.2d 740 (1945). Consequently, rather than barring an inquiry into the constitutional validity of Crane's prior conviction, the real rule recognized in Nebraska permits and demands just such inquiry into the constitutional validity of a prior plea-based conviction used for enhancement purposes.

In what is a constitutionally indefensible position, and, for that reason, what will undoubtedly and eventually become an exercise in futility, this court tries to avoid the effect of *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989):

> [A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case " 'clearly and expressly' " states that its judgment rests on a state procedural bar. *Caldwell* [*v. Mississippi*], 472 U. S., at 327, quoting [*Michigan v.*] *Long*, 463 U. S., at 1041.

Today, this court had the opportunity to identify the Nebraska procedure in which a defendant can raise and litigate a *Boykin* or *Irish* claim, an epiphanic enunciation that, much to the disappointment and frustration of many, continues to elude expression in this court's decisions. Rather, in its action today this court stubbornly ignores all previous federal decisions which have rejected the majority's renewed approach to a constitutional inquiry into a plea-based conviction for enhanced penalty purposes in Nebraska. See, *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984), *writ of habeas corpus granted, Gonzales v. Grammer*, 655 F. Supp. 1147 (D. Neb. 1987), *aff'd* 848 F.2d 894 (8th Cir. 1988); *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989), *writ of habeas corpus granted, Oliver v. Spire*, No. CV89-L-149 (D. Neb. Sept. 10, 1990). To persist on a course now thoroughly discredited by the federal courts comports with neither judicial economy nor reality.

Under the approach expressed by the majority today, Nebraska procedure lacks a method to judicially process a *Boykin* or *Irish* claim as an inquiry into the constitutional validity of a prior plea-based conviction used for enhancement of penalty and, hence, fails due process. Thus, notwithstanding today's decision in *Crane*, there is still "no new twist to *Oliver* . . . ." *State v. Johns*, 233 Neb. 477, 482, 445 N.W.2d 914, 918 (1989) (Shanahan, J., dissenting; renewal of dissent in *State v. Oliver, supra*). As matters now stand under Nebraska procedure with its continued cryptic means to litigate a *Boykin* or *Irish* claim, if Crane files an application for habeas corpus relief through federal court, that relief will be granted before the ink from the filing stamp dries on Crane's application.

Accordingly, the sentence imposed on Crane should be set aside, and these proceedings should be remanded for a sentence hearing at which Crane may challenge the constitutional validity of his prior plea-based conviction. In such a procedure, the State may demonstrate the constitutional validity of Crane's prior conviction and thereby constitutionally justify an enhanced sentence.